# Pittsburgh *v.* Reed, Appellant.

*Municipalities—Defective sidewalk—Accumulation of ice and snow—Recovery of damages by pedestrian—Property owner's liability to city.*

It is the primary duty of property owners along a street to keep in repair the sidewalks in front of their respective properties. A sidewalk that is permitted to get into a condition dangerous to the life or limb of a pedestrian, as the result of the accumulation of ice and snow, is not a sidewalk maintained in good repair, within the meaning of the law. Neglect of this primary legal duty lies at the foundation of the liability of the abutting property owners to the municipality, for the damages the municipality has been or may be compelled to pay for injury caused by such defects in the sidewalk.

Where a pedestrian has recovered a verdict against the city for injuries sustained through the negligent maintenance of a sidewalk, the municipality can collect from the property owner the amount it has been compelled to pay.

Argued April 27, 1920. Appeal, No. 27, April T., 1920, by defendant, from judgment of C. P. Allegheny County, Jan. T., 1915, No. 793, on verdict for plaintiff in the case of the City of Pittsburgh v. J. Allison Reed, doing business as J. R. Reed & Company. Before PORTER, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Assumpsit by a municipality against a property owner to recover the amount of a judgment obtained against it. Before HAYMAKER, J.

The court directed a verdict in favor of the plaintiff for $778.10 and entered judgment thereon. Defendant appealed.

444, (1920).] Assignment of Errors—Opinion of the Court.

*Errors assigned* were the charge of the court directing a verdict for the plaintiff and refusal of defendant's motion for judgment non obstante veredicto.

*R. A. Balph,* of *R. A. and James Balph,* for appellant.

*B. J. Jarrett,* and with him *C. A. O'Brien,* for appellee.

OPINION BY HEAD, J., July 14, 1920:

A woman brought an action of trespass against the City of Pittsburgh to recover damages for injuries resulting from a fall on the sidewalk of one of the streets of the city. She alleged that the sidewalk had been permitted to become in a dangerous condition by reason of the accumulation of snow and ice that had not been removed but had been allowed to be worn into ridges which, made it unsafe for travel; further that these dangerous obstructions in the way of pedestrians had been permitted to remain for such a long period of time that the city was visited with notice of their existence. The city gave notice of the filing of the suit to the present defendant, the tenant or occupant of the premises immediately abutting on that portion of the sidewalk where the accident occurred, and invited him to intervene for the protection of his own interests in case a recovery should be had against the city. Responding to that notice, the present defendant appeared by his counsel and joined with the city in making defense to the action. The trial resulted in a verdict for the plaintiff upon which judgment was entered, and no appeal having been taken, the city paid the judgment and now brings this action against the present defendant, the tenant of the property, to recover from him the amount of money it was compelled to pay in satisfaction of the said judgment.

We may concede, for the purposes of this argument, that although the record of the former trial was offered in evidence in the present case, there still remains open for the defendant the right to make defense if he can on

the ground that there never was any duty imposed by law upon him to keep the sidewalk free from dangerous obstructions of the character already described. The substantive defense advanced by the defendant in the court below, and here urged upon this court, was and is that there was no common law duty upon the defendant to remove from the sidewalk, in front of his premises, snow that had fallen there or ice that had accumulated there by natural causes only and not from any act or omission of his; that there is no statute of the State of Pennsylvania which in terms requires a property owner of the City of Pittsburgh to remove such snow or ice, and as a consequence there is no foundation for the assertion of any legal liability on him for the injuries resulting from the accident which was the foundation of the judgment against the city. We quote the following from the argument advanced by the able counsel for the appellant in his printed brief: "In the City of Pittsburgh the Acts of Assembly of 1857 and 1891, P. L. 79, section XI, authorizes the City of Pittsburgh to pass suitable ordinances requiring abutting property owners to lay, maintain and repair sidewalks. By virtue of these acts the primary duty to maintain sidewalks in good repair is cast upon abutting property owners." The whole argument thereafter advanced to support the main proposition appears to us to rest upon a misconception of the true meaning of the words "sidewalk and repair" in the sentence we have just quoted.

Every one agrees that a sidewalk is a portion of a public street or highway and that portion of it which is set apart more particularly for the use of pedestrians. The whole purpose of this separation of the highway into two parts is that there may be a place for reasonably safe passage by pedestrians along the public highway. A sidewalk is not merely a structure without relation to the purpose for which it exists. An impassable sidewalk is a contradiction in terms. If therefore it be plain that the law imposes upon any one the duty of

maintaining a sidewalk in a good state of repair, manifestly that obligation must be considered in relation to the purpose and reason for which the sidewalk exists. A sidewalk that is permitted to get into a condition dangerous to the life or limb of the pedestrian is not a sidewalk maintained in good repair within the meaning of the law. That this must be true seems to us to necessarily result from the long line of decisions wherein the failure to discharge that duty, with resulting injury to an innocent pedestrian, has always been recognized as ground for liability to respond in damages. So too the proper relation of municipality and property owner to each other where injury has resulted from a defective or dangerous condition of the sidewalk has been too often stated to be now successfully questioned.

In Lohr v. Phillipsburg, 156 Pa. 246, Mr. Justice MITCHELL, considering the difference between the relation of a master to a servant, injured because his working place had been permitted to become unsafe; and of a municipality towards a pedestrian, injured because a sidewalk had been permitted to become dangerously unsafe, declares: "But there is a clear distinction to be taken between the duties in the two cases. That of the master is primary and absolute, to know and to do, while that of the borough, or of any municipality, as to sidewalks, is secondary and supplemental, to see that the property owner makes and maintains a safe pavement, and its breach of duty is not in failing to do the work, but in failing to compel the owner to do it." So in Mintzer v. Hogg, 192 Pa. 137, Mr. Justice STERRITT, speaking of a point presented to the court below declaring there was no duty in law incumbent on the defendants to keep the highway in repair, said: "If this is intended to apply to the sidewalk on which plaintiff was injured, it is not correct as a legal proposition. It is the primary duty of the property owners along a street, to keep in proper repair the sidewalk in front of their respective properties." Citing Lohr v. Phillips-

burg, supra, and numerous other cases. So in the City of Pittsburgh v. Daly, 5 Pa. Superior Ct. 528, the late President Judge Rice, after quoting the language of Mr. Justice Mitchell, in the case above cited, declares: "Neglect of this primary legal duty lies at the foundation of his (the owner's) liability over to the municipality for the damages it has been compelled to pay for injuries caused by defects in the sidewalk."

The same assertion of duty on the part of the City of Pittsburgh is declared in the opinion of Reeder, J., in Pittsburgh v. Fay, 8 Pa. Superior Ct. 269, and the doctrine of Lohr v. Phillipsburg is expressly reaffirmed in Duncan v. Phila., 173 Pa. 550. In Clark v. Allegheny County, 260 Pa. 199, we have further evidence of the soundness of the proposition that where the law casts upon an individual or municipality the duty of maintaining a highway in good repair, that obligation is not discharged where the obligor fails to maintain the highway in a reasonably safe condition for public travel. In the case cited the County of Allegheny, under legislative authority, had taken over what had formerly been a township road. There was no complaint that the surface or structure of the road had become out of repair within the narrow meaning of that word adopted by the learned counsel for the appellant. The road was carried across a small stream by means of a culvert forming a part of the roadway. No guard rails had been erected along the sides of the road at this point and a pedestrian, walking along the highway on a dark and foggy night, fell from the side of it, where the small stream entered the culvert, sustaining the injuries for which he sought compensation. There was a verdict for the plaintiff in the court below and from the judgment entered thereon the county appealed. The argument advanced to support a reversal of the judgment was very much along the lines of the argument here presented to us. It was pointed out, however, by Mr. Chief Justice Brown, in a satisfactory opinion, that the argument was without

444, (1920).]    Opinion of the Court.

force and that the obligation to maintain the road in proper repair required that it be kept in a reasonably safe condition for the movement of pedestrians over its surface. The judgment was affirmed.

But we see no reason for further elaboration, as it appears to us the entire argument of the appellant is without any solid foundation in the law. The assignments of error are overruled.

Judgment affirmed.